1  David N. Lake, Esq., State Bar No. 180775
   **LAW OFFICES OF DAVID N. LAKE,**
2   **A Professional Corporation**
   16130 Ventura Boulevard, Suite 650
3  Encino, California 91436
   Telephone: (818) 788-5100
4  Facsimile: (818) 788-5199
   david@lakelawpc.com
5

6  Attorneys for Plaintiffs

7

8              **UNITED STATES DISTRICT COURT**

9           **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 STEPHANIE MALLEN, individually       Case No.
   and on behalf of all others similarly   **10 CV 1673 BEN      JMA**
12 situated,
                                         **CLASS ACTION COMPLAINT**
13          Plaintiffs,                  **FOR:**

14      v.                               1) **VIOLATION OF SECTION
                                            10(B) OF THE EXCHANGE
15 ALPHATEC HOLDINGS, INC., DIRK            ACT AND RULE 10B-5; AND**
   KUYPER, PETER C. WULFF,               2) **VIOLATION OF SECTION
16 MORTIMER BERKOWITZ, III,                 20(A) OF THE EXCHANGE
   HEALTHPOINT CAPITAL                      ACT**
17 PARTNERS, LLP, and
   HEALTHPOINT CAPITAL               **CLASS ACTION**
18 PARTNERS II, LLP,
                                     **JURY TRIAL DEMANDED**
19          Defendant.

20                                                          BY FAX

21

22

23

24

25

26

27

28

                        **Class Action Complaint**        **ORIGINAL**

CR

1   Plaintiff alleges the following Complaint based on information and belief and
2   upon the investigation of counsel, including a review of United States Securities and
3   Exchange Commission ("SEC") filings by Alphatec Holdings, Inc. ("ATEC" or the
4   "Company"), public statements, and various media reports.  Matters relating to
5   Plaintiff and her own acts are alleged upon personal knowledge.  Plaintiff believes
6   that substantial additional evidentiary support will exist for the allegations set forth
7   herein after a reasonable opportunity for discovery.

8                            **NATURE OF THE ACTION**

9       1.      This is a class action on behalf of purchasers of the common stock and
10   other publicly-traded securities of ATEC between December 18, 2009 and August 5,
11   2010 (the "Class Period), inclusive (the "Class"), seeking remedies under the
12   Securities Exchange Act of 1934 (the "Exchange Act").

13                        **JURISDICTION AND VENUE**

14      2.      The claims asserted herein arise under and pursuant to Sections 10(b)
15   of the Exchange Act [15 U.S.C. §§78j(b)] and 78t(a)] and Rule 10b-5 promulgated
16   thereunder by the SEC [17 C.F.R. §240.10b-5].

17      3.      This Court has jurisdiction over the subject matter of this action
18   pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

19      4.      Venue is proper in this District pursuant to Section 27 of the Exchange
20   Act and 28 U.S.C. §1391(b).  Many of the acts charged herein, including the
21   preparation and dissemination of materially false and misleading information,
22   occurred in substantial part in this District.

23      5.      In connection with the acts alleged in this Complaint, Defendants,
24   directly or indirectly, used the means and instrumentalities of interstate commerce,
25   including, but not limited to, the mails, interstate telephone communications and the
26   facilities of the national securities markets.

27                                 **PARTIES**

28      6.      Plaintiffs as set forth in the accompanying certifications incorporated

1  by reference herein, purchased the common stock of ATEC during the Class Period
2  and has been damaged as a result of the acts alleged herein.

3       7.    Defendant ATEC engages in the design, development, manufacture,
4  and marketing of products for the surgical treatment of spine disorders primarily
5  focused on the aging spine.  ATEC is incorporated in the State of Delaware, with
6  principal offices at 5818 El Camino Real, Carlsbad, California 92008.  As a publicly
7  traded company whose common stock was, and is, registered with the SEC pursuant
8  to the Exchange Act, and was, and is, traded on the NASDAQ Global Market
9  ("NASDAQ") and governed by the federal securities laws, ATEC had a duty to
10 disseminate accurate and truthful information with respect to its financial condition
11 and performance, growth, operations, financial statements, business, products,
12 markets, management, earnings and present and future business prospects, so that
13 the market price of ATEC's common stock would be based upon truthful and
14 accurate information.  The Defendant's misrepresentations and omissions during the
15 Class Period violated these specific requirements and obligations and caused
16 Plaintiff and members of the Class to purchase ATEC common stock at artificially
17 inflated prices, and to suffer losses proximately caused by the unlawful acts alleged
18 herein.  ATEC serves as a holding company for the operations of Alphatec Spine,
19 Inc. ("Alphatec Spine").

20      8.    Defendant Dirk Kuyper ("Kuyper") is ATEC's President and CEO and
21 a member of its Board of Directors.  Kuyper has been President and CEO since June
22 2007, and a Director since January 2008.

23      9.    Defendant Peter C. Wulff ("Wulff") has served as ATEC's Vice
24 President, CFO and Treasurer since June 2008.

25      10.   Mortimer Berkowitz, III ("Berkowitz") has served as ATEC's
26 Chairman of the Board since April 2007. He is currently a member of the Board of
27 Managers and a managing member of HGP, LLC and HGP II, LLC, ATEC's
28 indirect controlling shareholders.

11.   Defendant Healthpoint Capital Partners, L.P., a Delaware limited partnership, owns 10,877,183 ATEC shares. Defendant Healthpoint Capital Partners II, L.P., also a Delaware limited partnership, owns 22,454,744 ATEC shares. Together these entities (collectively, "Healthpoint") own and control approximately 38% of ATEC's outstanding shares. Healthpoint is a venture capital and private equity investor, specializing in companies producing orthopedic, spinal and dental devices and implants.   Healthpoint maintains its executive offices at 505 Park Avenue, 12th Floor, New York, New York 10022.   Five of ATEC's nine member Board of Directors are beneficial owners of or affiliated with Healthpoint Capital, LLC, which is the ultimate parent of defendant Healthpoint Capital Partners, L.P. Of these five, two (Stephen E. O'Neil and R. Ian Molson) constitute ATEC's Compensation Committee and thus control the compensation and continued employment of CEO Kuyper and all other officers.   Based on these facts, Healthpoint is a controlling person of ATEC with the meaning of Section 20 of the Securities Exchange Act of 1934.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

12.   Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all those who purchased the common stock of ATEC between December 18, 2009 and August 5, 2010, inclusive (the "Class"). Excluded from the Class are the Defendant Company, its officers and directors at all relevant times, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which the Defendant Company has or had a controlling interest.

13.   The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, ATEC common stock was actively traded on the NASDAQ system.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the

proposed Class. Record owners and other members of the Class may be identified from records maintained by ATEC or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

14. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendant's wrongful conduct in violation of federal law complained of herein.

15. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

16. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

     a. whether the federal securities laws were violated by Defendant's acts as alleged herein;

     b. whether statements made by the Defendant to the investing public during the Class Period misrepresented or omitted material facts about the business and operations of ATEC;

     c. whether the price of ATEC common stock was artificially inflated during the Class Period; and

     d. to what extent the members of the Class have sustained damages and the proper measure of damages.

17. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

18.   Defendant ATEC describes itself as:

> [A] medical device company that designs, develops,
> manufactures and markets products for the surgical
> treatment of spine disorders, primarily focused on the
> aging spine. The Company's mission is to combine world-
> class customer service with innovative, surgeon-driven
> design that will help improve the aging patient's quality of
> life. The Company is poised to achieve its goal through
> new solutions for patients with osteoporosis, stenosis and
> other aging spine deformities, improved minimally
> invasive products and techniques and integrated biologics
> solutions. In addition to its U.S. operations, the Company
> also markets its products in over 50 international markets
> through its subsidiary, Scient'x SA, via a direct sales force
> in France, Italy and the United Kingdom and via
> independent distributors in the rest of Europe, the Middle
> East and Africa, South America and Latin America. In
> Asia and Australia, the Company markets its products
> through its subsidiary, Alphatec Pacific, Inc, and through
> Scient'x's distributors in China, Korea and Australia.

19.   ATEC has grown swiftly over the last several years.  From revenues of
$80 million in 2007, to $101 million in 2008, to $132 million in 2009.  Despite this
record, ATEC's stock price has been erratic, and it has on occasion lacked growth
capital.   To support operations, it has relied upon controlling shareholder,
Healthpoint.  For example, in June 2009, ATEC turned to Healthpoint for $10
million in private placement financing.

20.   For several years prior to 2010, Healthpoint also owned a controlling
interest in another spinal products company based in France, Scient'x, S.A.
("Scient'x").  Healthpoint first acquired an interest in Scient'x in June 2004, when it
paid $28 million for a 33% interest, thus valuing the Scient'x at about $85 million.
Healthpoint purchased an additional 61% interest in Scient'x in November 2007,

1   paying $111 million, thus valuing the enterprise at that time at about $185 million.

2   Based on these two transactions, Healthpoint's total cash outlay to buy Scient'x

3   shares was $139 million.

4   21.   By late 2009, Healthpoint was interested in divesting itself of Scient'x,

5   even at a loss.  A likely buyer was ATEC, which Healthpoint also controlled.  A

6   transaction could allow Healthpoint to escape its investment in Scient'x (at least in

7   part), and even allow it to recover some of its cash investment. In the latter part of

8   2009, defendant Berkowitz began to negotiate such a transaction, whereby ATEC

9   would acquire Scient'x.

10   22.   Among the many downsides to such a transaction was that both ATEC

11   and Scient'x were losing money.  For the nine months ending Sept. 30, 2009, ATEC

12   lost $11.97 million, although its losses were diminishing. For that same period,

13   Scient'x lost $10.2 million, and was projecting a loss for 2009 of $17.6 million, a

14   further net loss in 2010. Alphatec, in contrast was projecting net income for 2010.

15   Combing these two companies would put a cash drain on ATEC, and could limit its

16   planned crossover to profitability.   Moreover, integrating the two companies'

17   operation would be a prolonged and expensive process.   To ensure that the two

18   combined companies would even survive, any combination would have to be

19   followed quickly by a cash raise, most likely via a public offering of ATEC stock.

20   23.   The Class Period begins on December 18, 2009, the day after ATEC

21   and Healthpoint made an after hours announcement that ATEC would acquire

22   Scient'x by issuing Healthpoint 24 million common shares, worth approximately

23   $118 million.  This was roughly $20 million less than Healthpoint had paid in cash

24   for its Scient'x investment, and approximately $67 million less than the $185

25   million valuation placed on Scient'x in 2007.  On that date, ATEC announced in a

26   press release that:

27   Alphatec   Holdings,   Inc.   (Nasdaq:ATEC),   the   parent
company   of   Alphatec   Spine,   Inc.,   a   medical   device

28

-7-

company that designs, develops, manufactures and markets products for the surgical treatment of spine disorders, with a focus on treating conditions affecting the aging spine, announced today that it has entered into a definitive agreement to acquire Scient'x Groupe SAS, a spinal implant company headquartered in France.

The transaction is structured as an all stock transaction such that 100% of outstanding Scient'x stock will be exchanged pursuant to a fixed ratio for 24 million shares of the Company's common stock. On a pro forma basis, current Alphatec shareholders will own approximately 69% of the combined company and approximately 31% will be held by current Scient'x shareholders. The transaction is currently expected to close by the end of the first quarter of 2010 and is subject to the approval of the Company's shareholders. Subject to the closing of the transaction, the Company expects 2010 pro forma full-year revenues to be in a range of $220 million to $225 million, and pro forma full-year 2010 adjusted EBITDA to be in a range of $32 million to $35 million. The transaction is expected to be neutral to slightly positive to 2010 EPS and accretive to 2011 EPS, excluding amortization of intangible assets, transaction expenses and related restructuring charges. The Company has absorbed transaction-related costs that had a negative impact to EPS in the third quarter and are expected to negatively impact previously issued EPS guidance for the fourth quarter of 2009. The Company also expects to absorb additional transaction-related expenses in the first quarter of 2010.

24.     As a result of ATEC's announcements, the Company's shares rose 8%.

25.     The revenue and income projection (the "Aggressive Projection") contained in the press release was designed to offset the deal's negatives, and to foment interest in the Company's stock, and a possible public offering. The Aggressive Projection was unreasonable and reckless for the following reasons, among others: (a) pricing pressures in the U.S. and Europe were steadily increasing,

1   and had been increasing since the fall of 2009.  This was especially true in ATEC's
2   important Florida market; (b) ATEC planned to dispose of  its Asian distributor,
3   which produced $12 million in annual revenues, without any realistic plan to replace
4   those lost revenues; (c) Scient'x, under the best of circumstances, had exhibited
5   almost no revenue growth in the first nine months of 2009, and its ability to market
6   and sell at even the same level in 2010 would be disrupted by any acquisition; and
7   (d) integrating the two companies would be a long process, which would affect 2010
8   revenues and earnings in a negative manner.

9       26.    Although the situation described above worsened as 2010 went on,
10  ATEC reiterated the Aggressive Projection on February 23, 2010, April 12, 2010
11  and May 10, 2010, and never withdrew it until the very end of the Class Period, five
12  weeks after the end of the June 30, 2010 fiscal second quarter.  On each instance,
13  the Aggressive Projection was unrealistic and reckless because: a) pricing pressures
14  in the U.S. and Europe were steadily increasing, and had been increasing since the
15  fall of 2009.  This was especially true in ATEC's important Florida market; (b)
16  ATEC planned to dispose of  its Asian distributor, which produced $12 million in
17  annual revenues, without any realistic plan to replace those lost revenues; (c)
18  Scient'x, under the best of circumstances, had exhibited.almost no revenue growth
19  in  the first nine months of 2009, and its ability to market and sell in 2010 would be
20  disrupted by any acquisition; and (d) integrating the two companies would be a long
21  process, which would affect 2010 revenues and earnings in a negative manner.

22      27.    On March 26, 2010 the Company closed the of Scient'x acquisition.
23  On April 12, 2010 ATEC announced a follow-on public offering wherein the
24  Company would sell 8 million shares and HealthpointCapital would also sell an
25  additional 8 million shares. The offering was priced at $5.00.  The offering closed
26  on April 21, 2010. The offering allowed HealthpointCapital to dump sell off a
27  significant number of its ATEC shares. Indeed, with over-allotments, ATEC sold
28  9.2 million, and Healthpoint sold 9.2 million shares, allowing both to enjoy $46

1  million in gross proceeds.

2      28.   On August 5, 2010, after the market close, ATEC shocked investors by

3  announcing disappointing quarterly results, and an extreme revision of the

4  Aggressive Projection. Now, based upon the realization of all the factors discussed

5  above, ATEC shares dropped 46%, or $2.03, to $2.39 per share on volume of 13.18

6  million shares. This represents a loss of shareholder value of over $200 million in

7  one trading day.

8  **Allegations of Scienter**

9      29.   As alleged herein, the Defendants acted with scienter in that ATEC

10 entered into a plan or scheme to artificially inflate its stock price, with the goal of

11 successfully selling shares to the public at the highest possible price (while reducing

12 the number of shares sold). Defendants were in possession of all information

13 relating to its costs necessary to accurately reports costs and earnings or,

14 alternatively, knew that there were too many unknowns to create a reasonable

15 projection. Nor did Defendants update or correct the Aggressive Projection once

16 they knew of its unrealistic and unreasonable nature. Defendants had a strong

17 motive to mislead the public to effectuate the follow-on offering: without that

18 offering, ATEC would have run dangerously short of cash, and Healthpoint would

19 have experienced even a greater loss on its already unsuccessful investment in

20 Scient'x, possibly endangering Healthpoint's ability to continue or raise future

21 money.

22 **Loss Causation/Economic Loss**

23     30.   After ATEC announced its performance and true outlook, ATEC shares

24 plummeted. At this juncture, the market realized that ATEC had deceived investors

25 for its own financial benefit, and that of Healthpoint. Plaintiff and the other Class

26 members suffered economic loss, i.e., damages, under the federal securities laws

27 when the truth was realized.

28     31.   The timing and magnitude of the price decline in ATEC common stock

-10-
Class Action Complaint

1  negate any inference that the loss suffered by Plaintiff and the other Class members
2  was caused by changed market conditions, macroeconomic or industry factors or
3  Company-specific facts unrelated to the Defendant's fraudulent conduct.   The
4  economic loss, i.e., damages, suffered by Plaintiff and the other Class members was
5  a direct result of the Defendant's scheme to artificially inflate the price of ATEC
6  common stock and the subsequent significant decline in the value of ATEC common
7  stock when the unexpected adverse facts were revealed.

8  **Applicability of Presumption of Reliance**
9  **Fraud on the Market Doctrine**

10  32.   At all relevant times, the market for ATEC's common stock was an
11  efficient market for the following reasons, among others:

12      a.   ATEC common stock met the requirements for listing, and was
13      listed and actively traded on the NASDAQ Global Select system, a
14      highly efficient and automated market; and

15      b.   as a regulated issuer, ATEC filed periodic public reports with the
16      SEC and the NASDAQ.

17  33.   As a result of the foregoing, the market for ATEC common stock
18  promptly digested current information regarding ATEC from all publicly available
19  sources and reflected such information in the prices of the stock.   Under these
20  circumstances, all purchasers of ATEC common stock during the Class Period
21  suffered similar injuries through their purchases of ATEC common stock at
22  artificially inflated prices and a presumption of reliance applies.

23  **No Safe Harbor**

24  34.   The statutory safe harbor provided for forward-looking statements
25  under certain circumstances does not apply to any of the allegedly false statements
26  pleaded in this Complaint.   The specific statements pleaded herein were not
27  identified as "forward-looking statements" when made.   To the extent there were
28  any forward-looking statements, there were no meaningful cautionary statements

1  identifying important factors that could cause actual results to differ materially from
2  those in the purportedly forward-looking statements.

3  ### FIRST CLAIM FOR RELIEF

4  (Violation of Section 10(b) of the Exchange Act and Rule 10b-5)

5  (Against Defendants ATEC, Kuyper and Wolff)

6  35.   Plaintiff repeats and realleges each and every allegation contained
7  above as if fully set forth herein.

8  36.   During the Class Period, Defendants (a) employed devices, schemes,
9  and artifices to defraud; (b) made untrue statements of material fact and/or omitted
10 to state material facts necessary to make the statements not misleading; and (c)
11 engaged in acts, practices, and a course of business which operated as a fraud and
12 deceit upon the purchasers of the Company's common stock during the Class
13 Period.

14 37.   Plaintiff and the Class have suffered damages in that, in reliance on the
15 integrity of the market, they paid artificially inflated prices for ATEC common
16 stock, and such prices declined when the truth was later realized.  Plaintiff and the
17 Class would not have purchased ATEC common stock at the prices they paid, or at
18 all, if they had been aware that the market prices had been artificially and falsely
19 inflated by Defendant's misleading statements.

20 38.   As a direct and proximate result of Defendant's wrongful conduct,
21 Plaintiff and the other members of the Class suffered damages in connection with
22 their purchases of ATEC common stock during the Class Period.

23 ### SECOND CLAIM FOR RELIEF

24 (Violation of Section 20(a) of the Exchange Act)

25 (Against Defendants Berkowitz and Healthpoint)

26 39.   Plaintiff repeats and realleges each and every allegation contained
27 above as if fully set forth herein.

28 40.   The Defendants herein acted as controlling persons of ATEC within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their stock ownership, board positions and control of compensation, these Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plainttiff contends are false and misleading. These Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

41.   In particular, each of these Defendants had direct and/or supervisory involvement in the operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Defendants culpably participated in the commission of the wrongs alleged herein.

42.   As alleged above, ATEC violated Section 10(b) and Rule 10b-5 by its acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Defendants herein are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE,** Plaintiff prays for relief and judgment, as follows:

A.   Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff, certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiff's counsel as Lead Counsel;

B.   Awarding compensatory damages in favor of Plaintiff and the other

1  Class members against the Defendant for all damages sustained as a result of
2  Defendant's wrongdoing, in an amount to be proven at trial, including interest
3  thereon;

4      C.      Awarding Plaintiff and the Class their reasonable costs and expenses
5  incurred in this action, including counsel fees and expert fees; and

6      D.      Such other and further relief as the Court may deem just and proper.

7

8                              **JURY DEMAND**

9      To the full extent available, Plaintiffs demand a trial by jury.

10

11  DATED: August 10, 2010              LAW OFFICES OF DAVID N. LAKE

12

13                                      By: _____
                                            DAVID N. LAKE
14                                          Attorneys for Plaintiffs

15  **Of Counsel**:

16  Roy L. Jacobs, Esq.
    ROY JACOBS & ASSOCIATES
17  60 East 42nd Street
    46th Floor
18  New York, NY 10165
    212-867-1156
19  212-504-8343 (Fax)
    email: rjacobs@jacobsclasslaw.com
20  Web: www.jacobsclasslaw.com

21

22

23

24

25

26

27

28



## PLAINTIFF'S CERTIFICATE

The undersigned ("Plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has reviewed the complaint against **Alphatec Holdings, Inc.** ("Alphatec") and certain other defendants.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as approved by the court.

5.     Plaintiff made the following transactions during the Class Period (December 18, 2009 through August 5, 2010) in the common shares of Alphatec:

| Purchases | | | | Sales | | |
|---|---|---|---|---|---|---|
| Date(s) | Number of Shares | Price | | Date(s) | Number of Shares | Price |
| 07/28/10 | 1000 | 4.2899 | | 08/05/10 | 500 | 4.4105 |
| 07/28/10 | 1000 | 4.2896 | | 08/03/10 | 2900 | 4.5601 |
| 07/21/10 | 700 | 4.44 | | 08/03/10 | 2000 | 4.35 |
| 07/21/10 | 200 | 4.42 | | 08/03/10 | 1000 | 4.5904 |
| 07/21/10 | 100 | 4.43 | | 08/03/10 | 100 | 4.56 |
| 07/09/10 | 1000 | 4.5388 | | 07/30/10 | 2000 | 4.3501 |
| 07/09/10 | 1000 | 4.5096 | | 07/27/10 | 80 | 4.42 |
| 07/07/10 | 600 | 4.29 | | 07/27/10 | 1070 | 4.4004 |
| 07/07/10 | 400 | 4.28 | | 07/22/10 | 1000 | 4.4704 |
| 06/08/10 | 750 | 4.7695 | | 07/13/10 | 2000 | 4.6601 |
| 05/25/10 | 400 | 5.15 | | 07/08/10 | 1000 | 4.6004 |
| 05/03/10 | 2000 | 6.5299 | | 07/08/10 | 1000 | 4.5404 |
| 05/03/10 | 1500 | 6.4699 | | 06/11/10 | 1000 | 4.8604 |
| 05/03/10 | 1000 | 6.4796 | | | | |
| 04/15/10 | 3000 | 5.6499 | | | | |
| 04/15/10 | 1000 | 5.6495 | | | | |
| 02/09/10 | 3000 | 4.35 | | | | |
| 01/25/10 | 500 | 4.6993 | | | | |
| 01/25/10 | 499 | 4.85 | | | | |
| 01/22/10 | 501 | 4.85 | | | | |
| 01/21/10 | 1300 | 5.02 | | | | |
| 01/20/10 | 700 | 5.02 | | | | |

6.     During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws.

7.     I declare under penalty of perjury, this ___09_ day of August, 2010 that the information above is accurate.


_____Stephanie Mallen
_____
           E-signed

JS 44  (Rev. 12/07)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| STEPHANIE MALLEN, individually and on behalf of all others similarly situated | ALPHATEC HOLDINGS, INC., DIRK KUXHER, PETER C. WULFF, MORTIMER BERKOWITZ, III, HEALTHPOINT |

(b) County of Residence of First Listed Plaintiff   **Boulder**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
David N. Lake, Esq., 16130 Ventura Boulevard, Suite 650, Encino, CA 91436; (818) 788-5100

Attorneys (If Known)
Unknown

**'10 CV 1 6 7 3 BEN     JMA**

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | SOCIAL SECURITY | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | LABOR | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability |  | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | PERSONAL INJURY | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | ☐ 362 Personal Injury - Med. Malpractice | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 365 Personal Injury - Product Liability | ☐ 790 Other Labor Litigation | FEDERAL TAX SUITS | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | PERSONAL PROPERTY |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 370 Other Fraud | IMMIGRATION |  | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 371 Truth in Lending | ☐ 462 Naturalization Application |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 380 Other Personal Property Damage | ☐ 463 Habeas Corpus - Alien Detainee |  | ☐ 950 Constitutionality of State Statutes |
| CIVIL RIGHTS | ☐ 385 Property Damage Product Liability | ☐ 465 Other Immigration Actions |  |  |
| ☐ 441 Voting | PRISONER PETITIONS |  |  |  |
| ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence |  |  |  |
| ☐ 443 Housing/ Accommodations | Habeas Corpus: |  |  |  |
| ☐ 444 Welfare | ☐ 530 General |  |  |  |
| ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty |  |  |  |
| ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other |  |  |  |
| ☐ 440 Other Civil Rights | ☐ 550 Civil Rights |  |  |  |
|  | ☐ 555 Prison Condition |  |  |  |

### V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC §§ 78j(b) and 78t
Brief description of cause:
Violation of federal securities laws

### VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 1,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

### VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE  08/10/2010
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT # 16803   AMOUNT $350—   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**ORIGINAL**   BY FAX

DUPLICATE

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS016803
Cashier ID: mbain
Transaction Date: 08/10/2010
Payer Name: JANNEY AND JANNEY
----------------------------------
CIVIL FILING FEE
  For: MALLEN V ALPHATEC HOLDINGS
  Case/Party: D-CAS-3-10-CV-001673-001
  Amount:        $350.00
----------------------------------
CHECK
  Check/Money Order Num: 298572
  Amt Tendered: $350.00
----------------------------------
Total Due:     $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.